IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JANE ROE,                                        )
    Plaintiff,                                  )
                                                 )
        v.                                    )          Civil Action No. 3:22cv749 (RCY)
                                                 )
TYKESHAE FOWLKES TUCKER, *et al.*,   )
    Defendants.                               )
                                                 )

## MEMORANDUM OPINION

This matter is before the Court on Defendant Tykeshae Fowlkes Tucker's and Defendant Rebecca Young's jointly filed Motion to Dismiss Plaintiff's Complaint Pursuant to Rule 12(b)(6) ("Motion to Dismiss") (ECF No. 13).  The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process.  E.D. Va. Loc. Civ. R. 7(J).  For the reasons stated herein, the Court will grant in part and deny in part Defendants' Motion to Dismiss (ECF No. 13) as to Count II, deny the Motion as to Count III, and grant the Motion as to Count IV.[1]

## I. BACKGROUND

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "accept[s] as true the plaintiff's well-pleaded allegations and views all facts and draws all reasonable inferences in the light most favorable to plaintiff."  *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Such a standard, however, does not require the

---

[1] Count I of Plaintiff's Complaint alleges an Eighth Amendment Violation under § 1983 against only Defendant Nkemdlilim Okoli, not either of the movants.  Thus, Count I is not included in the instant Motion to Dismiss and is not discussed in the present Opinion.

acceptance of unreasonable inferences or plaintiff's legal conclusions. *Id.* Additionally, a court may consider any documents attached to the complaint. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). Applying these standards, the Court construes the facts in the Complaint, including any attached documents, as follows.

Plaintiff Jane Roe was housed as an inmate at the Central Virginia Correctional Unit #13 ("CVCU" or "Unit # 13") from 2019 to 2021. (Compl. ¶15.) Around December 2020, after implying that he could resolve a disciplinary infraction for Plaintiff in exchange for a sexual favor, Defendant Nkemdlilim Okoli ("Okoli"), then a correctional officer employed at CVCU, followed Plaintiff into the shower area that she was cleaning. (*Id.* ¶¶ 19–23.) When he and Plaintiff were alone in the shower, Okoli blocked Plaintiff's exit from the area, grabbed her shoulder, pinned her against a shower door and aggressively groped her breasts and buttocks. (*Id.* ¶¶ 19–20; 23–24.) He then lowered his facemask and kissed her on the mouth. (*Id.*) Plaintiff did not immediately report Okoli but was placed on suicide watch in January 2021 due to the shame and fear she felt following the assault. (*Id.* ¶¶ 25–26.)

Plaintiff alleges that Okoli was well-known throughout the prison to sexually assault inmates using "blind spots," or areas without camera surveillance. (*Id.* ¶ 28.) She further asserts that Okoli's behavior was widespread and, based upon information and belief, that he assaulted at least six women during his tenure at CVCU. (*Id.*) Around May 2021, Defendant Rebecca Young ("Young") replaced Defendant Tykeshae Fowlkes Tucker ("Fowlkes") as Superintendent of CVCU. (*Id.* ¶ 29.) In June 2021, another inmate at CVCU reported that Okoli had sexually assaulted her. (*Id.* ¶ 30.) An investigation was then launched into Okoli. (*Id.*) In or about July 2021, an unidentified officer ("Officer Doe") questioned Plaintiff about rumors surrounding Okoli assaulting another inmate. (*Id.* ¶ 27.) Plaintiff then disclosed to Officer Doe that Okoli had

assaulted her. (*Id*.) Officer Doe assured her that she believed her disclosure, and Plaintiff believed

that Officer Doe then reported that disclosure through official channels. (*Id*.) Plaintiff later learned

that Officer Doe never reported the incident as she had been told. (*Id*. ¶ 30.) Plaintiff was

subsequently questioned by Defendant Young, at which time she learned that her disclosure to

Officer Doe was never reported. (*Id*.) She then re-reported the assault to Defendant Young. (*Id*.)

In December 2021, Plaintiff met with Assistant Commonwealth Attorney Matthew Graves

to provide a statement regarding her assault. (*Id*. ¶ 31.) Upon information and belief, Okoli was

not immediately terminated but was instead transferred to another prison within the Virginia

Department of Corrections. (*Id*. ¶ 32.) In August 2021, Plaintiff was transferred to Virginia

Correctional Center for Women. (*Id*. ¶ 33.) In February 2022, Plaintiff received a letter from the

Chesterfield County Office of the Commonwealth's Attorney informing her that, although they

found her allegation to be credible, because the prison was delayed in their reporting of Okoli, the

statute of limitations had run for sexual battery under Va. Code 18.2-67 just three days prior to the

report. As such, the Commonwealth was barred from bringing a sexual battery charge against

Okoli. (*Id*. ¶ 34.) Plaintiff alleges that the acts and omissions of Defendants directly resulted in

injury to Plaintiff, including extreme humiliation, medical expenses, injury to reputation, severe

emotional and psychological injury, and deprivation of constitutional rights and privileges. (*Id*. ¶

43.)

## II. PROCEDURAL HISTORY

On December 1, 2022, Plaintiff Jane Roe, who is currently incarcerated, filed a Complaint

through her counsel, asserting four counts. First, Plaintiff claimed that Defendant Okoli violated

her Eighth Amendment rights by sexually assaulting her in the prison facilities. Second, Plaintiff

claimed that all Defendants, including Defendants Fowlkes and Young, violated her Fourth, Fifth,

and Fourteenth Amendment Rights through acts and omissions that caused the intrusion into the realm of Roe's privacy, bodily security, and integrity.  Third, Plaintiff asserted that Defendants Fowlkes and Young failed to supervise and train subordinates, in violation of the Eighth Amendment, by knowing about and failing to address the predatory actions of Okoli and unspecified Prison Rape Elimination Act ("PREA") violations suffered by inmates.  (*Id*. ¶¶ 48, 50 (citing 34 U.S.C. §§ 30301 *et seq.* (previously codified as 42 U.S.C. §§ 15601 *et seq*)).)  Counts I, II and III were each filed pursuant to 42 U.S.C. § 1983.  Finally, in Count IV, Plaintiff asserted that Defendant Young was negligent in that she breached her duty of care by failing to report Plaintiff's disclosure of sexual assault to the appropriate authorities.  (*Id*. ¶¶ 56–60).  Plaintiff seeks $750,000 in compensatory damages and $350,000 in punitive damages, plus costs and reasonable attorneys' fees.

On January 13, 2023, Defendants Fowlkes and Young filed a Motion to Dismiss for Failure to State a Claim and memorandum in support (ECF Nos. 13, 14).  Plaintiff filed her Memorandum in Opposition to the motion on January 27, 2023 (ECF No. 16), and Defendants filed their Reply on February 16, 2023 (ECF No. 19).  On March 3, 2023, seeing that service was not timely completed as to Defendants Jane Doe and Nkemdlilim Okoli, the Court ordered Plaintiff to show cause why the action should not be dismissed as to the unserved defendants (ECF No. 20).  Plaintiff responded on March 15, indicating that Defendant Okoli had been properly served but voluntarily dismissing Defendant Doe from this civil action (ECF No. 21); the Court dismissed Defendant Doe on March 22 (ECF No. 23).

### III. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their res judicata effect. *Fayetteville Invs. V. Com. Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). Federal Rule of Civil Procedure 8 only requires that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," "detailed factual allegations" are not required in order to satisfy the pleading requirement of Federal Rule 8(a)(2). *Id.* (citations omitted). "[A] motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Id.* (citations omitted); *see also Martin*, 980 F.2d at 952.

However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Labels and conclusions," a "formulaic

recitation of the elements," and "naked assertions" without factual enhancement are insufficient. *Id.*

## IV. ANALYSIS

### A. Count II: Fourth, Fifth, and Fourteenth Amendment Violations

In Count II, Plaintiff alleges that the acts and omissions of all defendants, including Fowlkes and Young, intruded upon her personal privacy, bodily security, and integrity. Specifically, Plaintiff claims that Defendant Okoli was known to sexually assault inmates using "blind spots," or areas without camera surveillance. (Compl. ¶ 28.) She further states that Okoli's behavior was "widespread," and that, upon information and belief, he sexually assaulted at least six women during his tenure at CVCU. (*Id.*) As a result of Okoli's actions and Fowlkes's and Young's alleged oversights, Roe suffered severe injury, including humiliation, embarrassment, medical expenses, injury to her reputation, emotional and psychological injury, and deprivation of her constitutional rights and privileges. (*Id*. ¶ 43.) Defendants Fowlkes and Young argue that Plaintiff fails to state a claim in Count II because the complaint lacks factual allegations that either Fowlkes or Young personally acted to violate Roe's rights by their own actions. (Mot. Dismiss 2, 5–6, ECF No. 13.) Defendants further contend that, because there is no doctrine of respondeat superior applicable in § 1983 actions, they cannot be held responsible for the constitutional violations of a subordinate. (Mot. Dismiss 5–6.)

Defendants are correct that supervisory liability under § 1983 cannot be predicated on a theory of respondeat superior. *McWilliams v. Fairfax Cnty. Bd. of Supervisors*, 72 F.3d 1191, 1197 (4th Cir. 1996). However, supervisory officials may be held liable for the constitutional injuries inflicted by their subordinates in certain circumstances, based on the recognition that "supervisory indifference or tacit authorization of subordinates' misconduct may be a causative

6

factor in constitutional injuries." *Reid v. Kayye*, 885 F.2d 129, 131–33 (4th Cir. 1989); *see also*

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994); *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir.

1984).  To impose supervisory liability under §1983, the supervisor must have had actual or

constructive knowledge that the subordinate was engaged in conduct that posed a pervasive and

unreasonable risk of constitutional injury to citizens like the plaintiff, that the supervisor's

response to that knowledge was so inadequate as to show deliberate indifference to or tacit

authorization of the alleged offensive practices, and that there was an affirmative causal link

between the supervisor's inaction and the particular constitutional injury suffered.  *Shaw*, 13 F.3d

at 799 (4th Cir. 1994).

To satisfy the requirements of knowledge for supervisory liability under a civil rights

statute, the plaintiff must show that the supervisor knew that the subordinate's conduct not only

existed, but also posed a pervasive and unreasonable risk of constitutional injury to the plaintiff.

*Id.*  A "pervasive and unreasonable risk of harm" can be evinced by conduct that is widespread or

repeated.  *Id.*; *see also Slakan*, 737 F.2d at 373.  A plaintiff may establish the supervisor's

deliberate indifference by demonstrating their continued inaction in the face of documented

widespread abuses.  The plaintiff must also demonstrate causation, or "an affirmative causal link

between the supervisor's inaction and the harm suffered by the plaintiff."  *Shaw*, 13 F.3d at 799

(internal citations and quotations omitted).  However, the Court notes that a supervisor, like any

other official, may be found liable under § 1983 only on the basis of her own unconstitutional

misconduct.  *Iqbal*, 566 U.S. at 677.

To survive Defendants' Motion to Dismiss as to Count II, Roe's complaint must allege

facts sufficient for the Court to reasonably infer that Young and Fowlkes were not only aware of

Okoli's reputation and behavior prior to his assault of Roe, but also themselves engaged in conduct

7

with the requisite culpability that led to the violation of Plaintiff's constitutional rights. *See Iqbal*, 556 U.S. at 677 ("each Government official, his or her title notwithstanding, is only liable for his or her own misconduct"). Though not pled with great specificity, the Court finds that Plaintiff has sufficiently and plausibly alleged that Defendant Fowlkes violated her rights under the Fourth, Fifth, and Fourteenth Amendments. However, Plaintiff has failed to plausibly state this claim as it relates to Defendant Young. Pertinent to this Count, the Complaint alleges that "Defendant Okoli had a reputation among inmates for sexually harassing and soliciting sexual favors in exchange for good treatment" (Compl. ¶ 20); that Plaintiff's reaction to her alleged assault was so severe that she was placed on suicide watch (*Id*. ¶ 26); and crucially, that Okoli was "well known throughout the prison to sexually assault inmates" and that his behavior was "widespread" (*Id*. ¶ 28). The Complaint further alleges that these acts and omissions proximately caused Plaintiff's injuries. (*Id*. ¶ 41.) And, during the events in question, Defendant Fowlkes was Superintendent of CVCU and responsible for hiring and supervising the employees of CVCU. (*Id.* ¶ 12.)

In light of the low bar required to survive a Motion to Dismiss, these alleged facts, when taken as true, could plausibly have put Defendant Fowlkes on notice that Okoli's presence posed a danger to the rights, safety, and dignity of the inmates who interacted with him. The nature of Defendant Okoli's alleged actions—namely the sexual assault of multiple inmates—clearly results in constitutional injury, and Fowlkes was plausibly aware of this in her capacity as Superintendent of CVCU. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (stating that sexual assault "has no legitimate penalogical purpose"); *see also Copeland v. Lanham*, 1994 WL 64748, at *3 (4th Cir. 1994) (finding that Plaintiff's allegations of sexual assault indicated "a sufficiently imminent and grave risk of deprivation of his reasonable safety. . ."). Fowlkes allegedly did not take action to

protect inmates from Okoli during her tenure as Superintendent, which plausibly contributed to Plaintiff's injuries.

However, "a court's duty to liberally construe a plaintiff's complaint in the face of motion to dismiss is not the equivalent of a duty to re-write it." *Givens v. O'Quinn*, 121 F. App'x 984, 987 (4th Cir. 2005) (quoting *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993)). Plaintiff's complaint fails to explain how Defendant Young, who did not assume the position of Superintendent of Unit #13 until May 2021, would have either had the basis to form actual or constructive knowledge of Okoli's actions, or the authority to act in response to that knowledge when Roe's alleged assault occurred in December 2020. Therefore, Defendants' motion as to Count II of the Complaint will be granted as it relates to Defendant Young but denied as to Defendant Fowlkes.

**B. Count III: Failure to Supervise and Train**

Plaintiff alleges that Fowlkes and Young developed, implemented, approved, or maintained deficient customs, policies, and practices with deliberate indifference, which proximately caused and were the moving force behind Plaintiff's injuries. (Compl. ¶ 45.) Namely, the Complaint asserts that Fowlkes was aware of the coercive encounters between inmates and staff occurring in the facility's "blind spots," and further that Fowlkes failed to ensure that proper security measures were available at the facility to prevent officers from being alone and unsupervised with female inmates. (*Id*. ¶¶ 47–48.) As to Defendant Young, Plaintiff alleges that, as Superintendent, Young failed to ensure that officers were properly trained to handle and report disclosures of sexual assault and harassment based on PREA guidelines. (Compl. ¶ 49.) This failure allowed officers to ignore reports of serious sexual assault allegations against other officers, resulting in the violation of Plaintiff's constitutional rights. (*Id*. ¶¶ 49, 53.)

9

Defendants argue that Count III fails because the Complaint is wholly conclusory in its allegations concerning training. (Mot. Dismiss 10–12.) To the extent that Roe is attempting to hold Fowlkes and Young liable under a theory of supervisory liability, Defendants contend that the Complaint does not allege any prior instances of Okoli's misconduct of which Defendants should have been aware, or that Fowlkes and Young failed to take appropriate actions in the face of this known risk. (*Id.*)

The Eighth Amendment's protection against cruel and unusual punishment is violated when an officer exhibits deliberate indifference towards an inmate; that is, if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Estelle v. Gamble*, 429 U.S. 97, 102–04 (1976)). A constitutional violation in this context requires both an objective and subjective component. The objective prong asks whether the constitutional violation is "sufficiently serious." *Farmer*, 511 U.S. at 834. The more complex subjective prong requires evidence that the prison official knew of an excessive risk of harm to the inmate but disregarded that harm. *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991). To find a defendant liable for a failure to train or supervise subordinates, a plaintiff must show that the subordinate actually violated plaintiff's rights, that the supervisor did not properly supervise or train the subordinates, and that failure to supervise or train actually caused the subordinates to violate plaintiff's rights. *City of Canton v. Harris*, 489 U.S. 378, 388–92 (1989). Negligent or even grossly negligent training does not give rise to a § 1983 liability claim. *Id.* at 391–92. Instead, a defendant's fault for an alleged failure to act "must be shown by proof of a background of events and circumstances which establish that the 'policy of inaction' is the functional equivalent of a decision . . . to violate the Constitution." *Id.* at 394–95; *see also Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014) (liability under a failure to train theory requires defendant's

implementation of an unconstitutional custom, policy, or practice). There must exist a sufficiently close causal connection between the deliberately indifferent training and the deprivation of the plaintiff's federally protected right. *Id.* at 391–92.

In their reply, Defendants vigorously object to the additional information Plaintiff inserted in her brief in response to the present motion, arguing that such information amounts to an improper attempt to amend the Complaint. (Reply 3–4, ECF No. 19.) Further, they contend that, even when considering the new facts included in Plaintiff's response, the allegations still fail to state a plausible claim for failure to supervise. (*Id.*) The Court "may consider documents attached to the complaint or the motion to dismiss so long as they are integral to the complaint and authentic." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018). Courts may also consider facts that are a matter of public record or have been judicially noticed. *See Space Tech. Dev. Corp. v. Boeing Co.*, 209 F. App'x 236, 239 (2006) (adding that a court may "not consider anything else"). As such, the Court will consider the audits and public records included alongside the Complaint and the parties' Motion to Dismiss briefings, but will not venture further.

As described earlier in this opinion, Plaintiff plausibly alleges that Defendant Fowlkes did have indications of Okoli's reputation and behavior prior to Plaintiff's assault. Further, Plaintiff details that it was "well-known" that Okoli used "blind spots", or areas not covered by camera surveillance, to engage in these assaults. (Compl. ¶¶ 28, 46.) Plaintiff claims that the lack of surveillance and other security measures not only showed deliberate indifference to the safety of inmates, but also represented "a practice, custom, and/or policy where officers acted with impunity." (*Id.* ¶ 46.) Defendant Young in turn is alleged to have failed to ensure as Superintendent that officers were trained to properly handle and report disclosures of sexual

11

assault, as required by PREA guidelines. (*Id.* ¶ 49.)  The Complaint further alleges that Young

knew that other officers failed to report PREA violations suffered by inmates. (*Id.* ¶ 50).

Defendants, in their reply, attach hundreds of pages of documentation that purports to show

the active efforts of prison officials to comply with PREA.  However, the Court finds that such

documentation, consisting of reports completed between 2018 and 2022, does not effectively

undermine Plaintiff's complaint.  While Central Virginia Correctional Unit #13 earned good

reports in most years, the facility was subject to a corrective action plan in 2021—mere months

following Plaintiff's assault allegation. (*See* Reply, Ex. 6 at 16, ECF No. 19-6.)  Specifically, two

staff members were terminated due to improprieties, new cameras were added, all inmates, staff,

and contractors received some form of a PREA refresher, and an informative PREA channel was

added to television channels. (*Id.*)  Of course, this alone does not establish Defendants'

wrongdoing in Plaintiff's case, nor does the report explain what, if any, infractions led to these

changes.  However, the balance of this information, including the close temporal proximity

between this corrective action and the behavior in the Complaint, strengthen rather than weaken

the plausibility of the Complaint's allegations.

Given Plaintiff's allegations of Defendant Fowlkes's knowledge of systemic issues and

inaction in the face of the same, plus Plaintiff's allegations of causally related constitutional

violations (deprivation of her right to be free of sexual assault under the Eighth Amendment), the

Court holds that Plaintiff has plausibly alleged a claim for failure to supervise and train against

Defendant Fowlkes.

However, Plaintiff has not successfully alleged a claim against Defendant Young.  Section

1983 provides a cause of action against persons who, while acting under the color of law, deprive

another of their Constitutional rights. *See* 42 U,S.C. § 1983.  However, "section 1983 itself creates

no rights; rather it provides a method for vindicating federal rights elsewhere conferred." *Doe v. Broderick*, 225 F.3d 440, 447 (4th Cir. 2000).  Unfortunately, courts consistently find that there is no independent cause of action under PREA.  *Bracy v. Tully*, No. 1:22cv827, 2022 WL 3229325, at *2 (E.D. Va. August 10, 2022) ("Nothing in the statute suggests that PREA intended to provide a private cause of action for rape, sexual assault, or sexual abuse"); *Hill v. Hickman Cnty Jail*, No. 1:15cv0071, 2015 WL 5009301, at *3 (M.D. Tenn. August 21, 2015) (collecting cases and holding that "[t]o the extent the complaint might be construed as bringing a claim under the PREA, such claim must be dismissed.").  As discussed in the previous section, Defendant Young is not implicated in the violation of Plaintiff's rights as it relates to her assault, given the timing of when Young became Superintendent.  Rather, Plaintiff's alleged violation against Young is a failure to train and supervise subordinates about PREA reporting procedures.  As there is no cause of action under PREA itself, and Plaintiff has not identified a constitutional right that was violated as a result of Young's actions, Plaintiff's Complaint does not sustain a cause of action against Defendant Young.

As such, the Court will deny Defendant's motion as to Count III against Defendant Fowlkes but will grant the motion as to Defendant Young.

**C. Count IV: Negligence**

In Count IV, Plaintiff alleges that Defendant Young behaved negligently when she failed to timely report Plaintiff's disclosure of sexual assault to the appropriate PREA representative and the Commonwealth Attorney's office.  (*Compl.* ¶¶ 56-60.)  Plaintiff further contends that Defendant Young breached the duty owed to Plaintiff when she failed to exercise due care and report Plaintiff's disclosure.  (*Id.* ¶ 57.)  Plaintiff alleges that she has suffered damages as a result of this negligence.  (*Id.* ¶ 60.)

Defendants first respond that Plaintiff fails to allege sufficient facts to support a claim of negligence, as citizens do not have an enforceable right to institute a criminal prosecution. (Mot. Dismiss 16.) Second, Defendants argue that Count IV is barred by the statute of limitations. (*Id*. 17.) Third, Defendants contend that Defendant Young is entitled to sovereign immunity. (*Id*. 18.) Finally, they argue that Defendant Young cannot be held liable for the acts of Defendant Okoli under a theory of respondeat superior. (*Id*. 21.) The Court will first address Defendants' argument that Plaintiff failed to state a claim, as that question is dispositive.

In Virginia, the elements needed to establish ordinary negligence are a legal duty on the part of the defendant, a breach of that duty, and a showing that such breach was the proximate cause of injury, resulting in damage to the plaintiff. *Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc.*, 624 S.E.2d 55, 62 (Va. 2006). Defendants do not try to assert that Young, as new Superintendent of Unit #13, did not owe a duty of care to Roe. Rather, Defendant points out that the injury element of negligence is missing, as no private citizen has a right to demand an investigation or prosecution against another. (Mot. Dismiss 16.) The Court agrees.

"No citizen has an enforceable right to institute a criminal prosecution." *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990) (*citing Linda R. v. Richard V.*, 410 U.S. 614, 619 (1973)). The Court disagrees with Defendant's seeming assertion that Young did not have an obligation to investigate Plaintiff's complaint, as 28 CFR § 115.161(a) (part of the regulations implementing PREA) requires immediate reporting of knowledge, suspicion, or information concerning incidents of prison-based sexual assault. However, the opportunity impeded by the alleged delay—prosecution of Okoli for sexual battery—was not one to which Plaintiff was entitled by law. Plaintiff's Complaint fails to establish a nexus between Young's actions and any injury to Plaintiff beyond her inability to initiate a criminal proceeding. As such, Plaintiff has failed to allege all the

14

necessary elements of negligence and has thus failed to state a claim in Count IV.  The Court will therefore grant Defendants' Motion as to Count IV of the Complaint.

## V. CONCLUSION

For the reasons set forth above, the Court will deny in part and grant in part Defendants' Motion to Dismiss (ECF No. 13), specifically dismissing Plaintiff's claims against Defendant Young in Counts II, III, and IV; Plaintiff's claims against Defendant Fowlkes will survive the Motion to Dismiss.  An appropriate Order will accompany this Memorandum Opinion.


Richmond, Virginia
Date: July 5, 2023

/s/

Roderick C. Young
United States District Judge

15