IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| JANE ROE,<br>    Plaintiff,<br><br>    v.<br><br>TYKESHAE FOWLKES TUCKER, *et al.*,<br>    Defendants. | Civil Action No. 3:22cv749 (RCY) |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Tykeshae Fowlkes Tucker's Motion for Summary Judgment (ECF No. 47).[1]  The motion has been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process.  E.D. Va. Loc. Civ. R. 7(J).  For the reasons stated herein, the Court will grant Defendant's Motion for Summary Judgment (ECF No. 47).

**I. BACKGROUND**

In reviewing a motion for summary judgment, the Court exercises great care to resolve any factual disputes and "competing, rational inferences" in the light most favorable to the opposing party.  *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citation omitted).

At the outset, the Court notes that Defendant's Memorandum in Support of the Motion for Summary Judgment includes a specifically captioned section listing all material facts that

---

[1] The Motion, originally filed on behalf of both Defendants Fowlkes and Young, was filed prior to the Court's ruling on the Defendants' Motion to Dismiss, Mem. Op., ECF No. 56, in which the Court granted dismissal of Plaintiff's claims against Defendant Young.  As such, the Court now treats the pending Motion for Summary Judgment, though originally jointly filed, as simply Defendant Fowlkes's Motion.

Defendant contends are undisputed or genuinely in dispute, respectively, as required by E.D. Va. Loc. Civ. R. 56(B)[2] and consistent with Fed. R. Civ. P. 56(c)(1). Under the Local Rules, the Court may accept those facts identified by the movant as undisputed to be admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion and supported by reference to record evidence. Plaintiff did not include a statement of genuine issues in her Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Opposition Brief"). And while Plaintiff endeavors to inject certain new facts into this matter in her Opposition Brief, those facts may not be considered as they are unsupported by reference to any record evidence. *See* Fed. R. Civ. P. 56(c)(1).

The Court has concluded that the following narrative represents the undisputed facts for the purpose of resolving Defendant's Motion for Summary Judgment:

**A. Factual Background**

1. The Assault

Plaintiff Jane Roe was housed as an inmate at the Central Virginia Correction Unit #13 ("CVCU" or "Unit # 13") from 2019 to 2021. Compl. ¶ 15, ECF No. 1; Am. Answer ¶ 15, ECF No. 49. Around June 2021, Defendant received communications from another inmate at CVCU

---

[2] Local Rule 56(B) provides:

> Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated *and citing the parts of the record relied on to support the facts alleged to be in dispute*. In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

E.D. Va. Loc. Civ. R. 56(B) (emphasis added). This practice is consistent with the 2011 amendments to the Federal Rules of Civil Procedure, which require the parties to support their factual assertions by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c); *see also Campbell v. Verizon Virginia, Inc.*, 812 F. Supp. 2d 748, 759 n.5 (E.D. Va. 2011) (discussing 2011 amendments to Rule 56), aff'd 474 F. App'x 167 (4th Cir. June 18, 2012).

indicating that Defendant Nkemdlilim Okoli ("Okoli") had engaged in sexual contact with inmates. Compl. ¶ 30; Am. Answer ¶ 30. Okoli was placed on pre-disciplinary leave while Defendant began an investigation. Compl. ¶ 30; Am. Answer ¶ 30. In or about July 2021, during the course of this investigation, Plaintiff reported a sexual encounter with Okoli to Rebecca Young ("Young"), the Superintendent of CVCU.[3] Compl. ¶ 30; Am. Answer ¶ 30. However, there is no record of Plaintiff filing any formal grievances related to her alleged assault. Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem. Supp.") 5–6, ECF No. 48; Crump Aff. ¶ 10, ECF No. 48-2. In August 2021, Plaintiff was transferred to the Virginia Correctional Center for Women ("VCCW"). Compl. ¶ 33; Am. Answer ¶ 33.

    2. Virginia Department of Corrections Grievance Procedures

The Virginia Department of Corrections ("VDOC") promulgates Operating Procedure ("OP") 866.1, Offender Grievance Procedure, which provides a mechanism for inmates to "resolve complaints, appeal administrative decisions, and challenge the substance of procedures." Def.'s Mem. Supp. 2. Nearly all issues an inmate may face are grievable. Def.'s Mem. Supp. 2; Crump Aff. ¶ 5.

The standard grievance process is as follows: (1) the inmate must file an informal complaint, then (2) a regular grievance, and if needed, (3) an appeal. Def.'s Mem. Supp. 3; Crump Aff. ¶ 6. While the informal complaint step is not required when an inmate is alleging an incident of sexual abuse, OP 866.1 V.F.1, ECF No. 48-2, the grievance process otherwise remains the same. *See* Crump Aff. ¶ 6–9; OP 866.1 V.F.1, VI. When filing a regular grievance—again, other than in cases involving allegations of sexual assault—the inmate must attach any required documentation from her attempt to informally resolve the issue. Crump Aff. ¶ 6. Grievances must then be

---

[3] Young replaced the previous Superintendent, Defendant Tykeshae Fowlkes Tucker ("Fowlkes"), in May 2021.

3

appealed through all available levels of review to satisfy the requirement of exhaustion before filing a lawsuit. *Id.* Inmates may also file emergency grievances if they feel there is a "situation or condition which may subject [them] to immediate risk of serious physical injury or irreparable harm." *Id.* at ¶ 9. Emergency grievances forms are available on a 24-hour basis regardless of housing status, and must be responded to within eight hours. *Id.* Filing an emergency grievance alone, however, does not satisfy the administrative exhaustion requirement. *Id.* Instead, the inmate must follow the standard grievance process as well, in order to satisfy the exhaustion requirement. *Id.*

**B. Relevant Procedural History**

On December 1, 2022, Plaintiff Jane Roe, who is currently incarcerated, filed a Complaint through her counsel asserting various counts against Defendants Tucker, Okoli, Young, and Jane Doe. ECF No. 1. Defendants Young and Fowlkes subsequently filed a Motion to Dismiss Plaintiff's Complaint. ECF No. 13. On July 5, 2023, This Court granted certain portions of the Motion to Dismiss, dismissing Plaintiff's claims against Defendant Young but permitting Plaintiff's claims against Defendant Fowlkes to proceed. Mem. Op. 15, ECF No. 56. Additionally, Plaintiff voluntarily dismissed Jane Doe from the action in late March 2023. ECF Nos. 21 and 23. Defendant Okoli was served on May 11, 2023, ECF No. 40, but has never appeared nor responded to Plaintiff's Complaint.

Defendants Tucker and Young filed the instant Motion for Summary Judgment on June 6, 2023. ECF No. 47. Plaintiff filed her Memorandum in Opposition on June 20, 2023. ECF No. 51. Defendants then filed their Reply in Support of their Motion for Summary Judgment on June 26, 2023.

## II. STANDARD OF REVIEW

The relevant inquiry in the summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). "[T]he mere existence of some *alleged* factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48 (emphasis added). A material fact is one that might affect the outcome of a party's case. *Id.* at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). A "genuine" issue concerning a "material" fact only arises when the evidence, viewed in the light most favorable to the nonmoving party, is sufficient to allow a reasonable trier of fact to return a verdict in that party's favor. *Id.*

Furthermore, to defeat an otherwise properly supported motion for summary judgment, the nonmoving party must rely on more than conclusory allegations, "mere speculation or the building of one inference upon another," or the "mere existence of a scintilla of evidence" concerning a material fact. *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997) (citations omitted); *Anderson*, 477 U.S. at 252. Accordingly, to deny a motion for summary judgment, "[t]he disputed facts must be material to an issue necessary for the proper resolution of the case, and the quality and quantity of the evidence offered to create a question of fact must be adequate." *Thompson Everett, Inc. v. Nat'l Cable Adver., LP*, 57 F.3d 1317, 1323 (4th Cir. 1995). "Thus, if the evidence

is merely colorable or not significantly probative, it may not be adequate to oppose entry of summary judgment." *Id*. (quotation marks and citation omitted).

### III. DISCUSSION

The overarching issues to be decided by this Court are whether (1) Plaintiff properly exhausted the relevant administrative avenues, and (2) whether Plaintiff is otherwise excused from the exhaustion requirement. This Court answers both questions in the negative.

### A. Whether Plaintiff Properly Exhausted the Administrative Avenues Available to Her

The primary issue in this matter is whether Plaintiff properly exhausted the administrative avenues that were available to her, such that she may now pursue this lawsuit in federal court.

Under the Prison Litigation Reform Act ("PLRA"), "no action shall be brought with respect to prison conditions under [42 U.S.C.] § 1983 . . . or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the statutory language makes clear, inmates must exhaust their administrative remedies *before* pursuing litigation. *See Ross v. Blake,* 578 U.S. 632, 635; Moss *v. Harwood*, 19. F.4th 614, 621 (4th Cir. 2021). Moreover, the language of the PLRA is mandatory—inmates *must* exhaust their administrative remedies, regardless of whether the relief they seek can ultimately be granted by the administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Finally, the PLRA requires proper exhaustion. *See id.* at 89–90, 94. Proper exhaustion requires compliance with an agency's deadlines and "other critical procedural rules," in order to give the agency a fair opportunity to adjudicate the aggrieved party's claims. *See id.* at 89–90, 94. Proper exhaustion also entails using all of the steps that the agency holds out, and doing so properly. *See id.* at 81 (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2006)).

Turning to the parties' dispute, Defendant argues that Plaintiff did not properly exhaust the administrative remedies available to her under applicable VDOC policies. Specifically, Defendant argues that to properly exhaust, "Roe must submit a complaint by filing an informal complaint, followed by a regular grievance, and appeal through all available levels." Defendant continues, "Roe did not do this. Roe has filed no informal complaint or regular grievance concerning the allegations in this case." Defendant has presented uncontroverted evidence to this effect via the affidavits of E. Carrico and C. Crump. *See* Def.'s Mem. Supp. 5–6. Conversely, Plaintiff argues—without reference to any evidentiary record—that she (1) verbally reported the sexual assault to a VDOC employee, and (2) provided verbal and written statements to Defendant Young. Pl.'s Mem. Opp'n Summ. J. ("Pl.'s Opp'n") 3–4, ECF No. 51. This Court cannot, however, consider these claims given the lack of reference to the evidentiary record.[4] *See* Fed. R. Civ. P. 56(c) (noting that a party asserting a fact must support the assertion by reference to "materials in the record.")

In turn, the relevant facts for summary judgment purposes are as follows: Plaintiff was required by VDOC policy—and in turn, the PLRA—to at least file a formal grievance.[5] Regardless of Plaintiff's preferred remedy, this was a necessary step. *See Woodford*, 548 U.S. at 85. Plaintiff did not file a formal grievance, and her failure to do constitutes a failure to properly exhaust available remedies.

---

[4] Even if the Court could consider this portion of Plaintiff's argument, such verbal and written reports would be insufficient to satisfy the administrative exhaustion requirement. Instead, Plaintiff is required to follow the formal grievance process outlined in OPP 866.1. *See* OP 866.1 VI.A.

[5] Defendant contends that Plaintiff must first file an informal complaint under these circumstances in order to exhaust. Def.'s Mem. Supp. 8. Such a claim is directly contradicted by the language in OP 866.1: "An offender is *not* required to use the *informal complaint* process, or to otherwise attempt to resolve with staff, an alleged incident of sexual abuse." OP 866.1 V.F.1. However, Defendant is correct that OP 866.1 still requires the regular grievance process under such circumstances. *See* OP 866.1 IV.C.1, VI, VII.

## B. Whether Plaintiff Is Otherwise Excused From the Administrative Exhaustion Requirement

Plaintiff argues in the alternative that she is excused from the administrative exhaustion requirement because (1) the VDOC grievance process is "so incomprehensible that no ordinary prisoner can discern or navigate it," and (2) the VDOC grievance process "prevented inmates from availing themselves of the process through misrepresentation." While this Court is certainly sympathetic to Plaintiff's unfortunate situation, her arguments fail as a matter of law.

In *Ross v. Blake*, the Supreme Court noted that the PLRA's exhaustion requirement "hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust *available* remedies, but need not exhaust unavailable ones." *Ross*, 578 U.S. at 642 (emphasis added). In turn, the Supreme Court outlined three scenarios where administrative remedies are "unavailable" under the PLRA, thus excusing an inmate's purported failure to exhaust:

> [1] . . . [A]n administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates. . . . [2] [A]n administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. . . . [For instance, where] rules are 'so confusing that . . . no reasonable prisoner can use them,' . . . '[rendering them] no longer available.' . . . [3] . . . [W]hen administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.

*Ross*, 578 U.S. at 642–44. Importantly, once a defendant presents evidence of a failure to exhaust, the burden shifts to the plaintiff to show, by a preponderance of the evidence, that administrative remedies were unavailable. *Cecil v. Bowman*, 2023 WL 4140833 (W.D. Va. June 22, 2023) (citing *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011); *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011)).

Here, Plaintiff argues that the second and third scenarios outlined above describe her situation, thus excusing any alleged failure to exhaust. These contentions are dealt with in turn below.

1. <u>The Virginia Department of Corrections Grievance Process Adequately Outlines the Steps an Inmate Needs to Take to Exhaust Her Remedies</u>

As noted above, an administrative procedure may be deemed unavailable—rendering the exhaustion thereof excused—where it is "so opaque" as to be "incapable of use." *See Ross*, 578 U.S. at 643. *Ross* provides additional guidance on what sorts of contexts could potentially meet this relatively high bar: "The procedures need not be sufficiently 'plain' as to preclude any reasonable mistake or debate with respect to their meaning. . . . When an administrative process is susceptible of multiple reasonable interpretations, the inmate should err on the side of exhaustion." *See id.* at 644. The Court continued, "[b]ut where a remedy is . . . essentially 'unknowable'—so that no ordinary prisoner can make sense of what it demands—then it is also unavailable." *Id.* This holding suggests three main takeaways: (1) perfect precision in the drafting of administrative procedures is neither expected nor required; (2) inmates are expected to err on the side of exhaustion if procedures are arguably unclear; and (3) administrative procedures should only be deemed unavailable under the PLRA where the relevant procedures and remedies are essentially "unknowable" to ordinary prisoners. *See id.*

Here, Plaintiff argues that VDOC OP 866.1 "confounds even an inmate who has carefully reviewed the procedures and requirements and seeks to successfully exhaust all administrative remedies," rendering the process unnavigable and, in turn, unavailable. Pl.'s Opp'n 6 (citing *Graham v. Cnty. of Gloucester, Va.*, 668 F. Supp. 2d 734, 738 (E.D. Va. 2009)). While Plaintiff makes various contentions regarding the alleged opacity of VDOC 866.1, they are all unavailing. For instance, Plaintiff spends a few pages arguing about the confusion allegedly engendered by

9

the interplay between the Prison Rape Elimination Act ("PREA") and the VDOC procedures at issue. *See* Mem. Opp'n 6–9. However, the fact that grievance procedures may confound prisoners is not enough to render such procedures unavailable. Instead, the process or remedy in question must be "essentially unknowable." *See Ross*, 578 U.S. at 643. This high bar is not met here. As Defendant points out, any claim that "no ordinary prisoner" could make sense of what the VDOC procedures command is belied by the fact that "VDOC has received at least 219 Level II grievance appeals regarding PREA complaints" since 2020. *See* Def.'s Reply 6–7. "Ordinary prisoners" have thus filed hundreds of complaints—and subsequent appeals—concerning the same sort of conduct challenged by Plaintiff. This statistic is strong evidence that *even if* the VDOC procedures are confusing, they are not "unknowable" such as to excuse the exhaustion thereof.

Plaintiff continues by attempting to analogize this situation to that of the plaintiff in *Goebert*, an Eleventh Circuit case where the court found that the administrative procedures in question were unavailable. *See Goebert v. Lee County*, 510 F.3d 1312, 1322–23 (11th Cir. 2007). However, *Goebert* is factually distinct from the instant case. In *Goebert*, there was uncertainty about whether the plaintiff ever received the relevant inmate handbook, and the parties agreed that the plaintiff never received a copy of the jail's General Operating Procedures. *Id.* at 1322. On its way to finding that the administrative procedures in question were unavailable, the court noted, "[i]t is difficult to define 'such remedies as are available' to an inmate in a way that includes remedies or requirements that an inmate does not know about, and cannot discover through reasonable effort by the time they are needed." *Id.* The court concluded its availability discussion by highlighting the main issue with the defendant's position: "[i]f we allowed jails and prisons to play hide-and-seek with administrative remedies, they could keep all remedies under wraps until after a lawsuit is filed and then uncover them and proclaim that the remedies were available all

10

along." *Id.* at 1323. Here, there are simply no allegations that a similar sort of prohibited "hide-and-seek" occurred. While it may well be the case that the procedures in question were unclear to Plaintiff, they were not hidden from her entirely, as in *Goebert*. Instead, the record evidence reflects that Plaintiff was in fact oriented on the grievance procedures at issue. *See* Orientation Contract 1–5, ECF No. 55-2.

Plaintiff may well be correct that certain portions of VDOC 866.1 are confusing. However, more is needed to excuse administrative exhaustion—the procedures in question must be so opaque as to be unknowable to ordinary prisoners. VDOC 866.1 simply does not meet that threshold, and for that reason, Plaintiff's argument on this point is unavailing.

2. The Virginia Department of Corrections Did Not Render the Grievance Process Unavailable via Machination, Misrepresentation, or Intimidation

An administrative procedure is likewise deemed unavailable—and any failure to exhaust such procedure is excused—when "administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. This exception is typically tied to active, misleading behavior on the part of prison officials or administrators that causes the inmate's failure to exhaust. *See id.* (citing, *e.g.*, *Davis v. Hernandez*, 798 F.3d 290, 295 (5th Cir. 2015) ("Grievance procedures are unavailable . . . if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process."); *Tuckel v. Grover*, 660 F.3d 1249, 1252–53 (10th Cir. 2011) ("[W]hen a prison official inhibits an inmate from utilizing an administrative process through threats or intimidation, that process can no longer be said to be 'available'."); *Goebert v. Lee County*, 510 F.3d 1312, 1323 (11th Cir. 2007) (holding that if a prison "play[s] hide-and-seek with administrative remedies," then they are not available)). The touchstone of this

11

exception is misleading, coercive, or otherwise underhanded behavior that *causes* an inmate not to exhaust their administrative remedies.

Plaintiff argues that OP 866.1 "intentionally misrepresent[s] the correct [administrative] process in order to deprive inmates of their rights." Pl.'s Opp'n 9. Specifically, Plaintiff claims that the grievance process in question "treats allegations of sexual assault and harassment as a complete and separate process from the regular grievance process." *Id.* In turn, the argument goes, "an inmate is misled to understand that they have adequately completed the grievance process by submitting their complaint if they have been sexually assaulted or harassed." *Id.* at 10.[6] In response, Defendant contends that Plaintiff has presented no evidence that she was specifically and individually misled by any prison officials into thinking that she did not need to follow the formal grievance process. *See* Def.'s Reply 7. Next, Defendant notes that Plaintiff never submitted a regular grievance in the first place. *See* Crump Aff. ¶ 10. Defendant also asserts that (1) OP 866.1 is made available to inmates in VDOC Custody, and (2) inmates—including Plaintiff—are oriented on the grievance procedure at VDOC institutions. *See* Orientation Contract 1–5.

After careful review of the undisputed facts in the evidentiary record, this Court finds that Plaintiff was not "thwart[ed] . . . from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644. Two main findings compel this result: (1) Plaintiff was undisputedly given an orientation on the relevant grievance process, and (2) Plaintiff has adduced no evidence of any sort of underhanded behavior or coercive

---

[6] During this portion of her argument, Plaintiff references alleged facts that are not in the record. *See, e.g.,* Pl.'s Opp'n 10 (alleging the ways in which Superintendent Young and VDOC investigators purportedly misled her as to the grievance process). Unfortunately for Plaintiff, such unsupported arguments may not be considered at the summary judgment stage. *See* Fed. R. Civ. P. 56(c) (noting that a party asserting a fact must support the assertion by reference to "materials in the record").

pressure on behalf of prison administrators that caused her failure to exhaust. These findings differentiate Plaintiff's situation from those plaintiffs who have successfully made unavailability arguments on similar grounds. *See, e.g., Davis v. Hernandez*, 798 F.3d 290, 295 (5th Cir. 2015) (holding that administrative procedures were unavailable to the plaintiff where the plaintiff was affirmatively and incorrectly told that the grievance process included only a single step with no option to appeal); *Tuckel v. Grover*, 660 F.3d 1249, 1251–53 (holding that administrative procedures were unavailable where the plaintiff was assaulted by other inmates at the urging of a prison official, after plaintiff's prior grievance adversely impacted that official's incentive pay, thus inhibiting plaintiff's ability to pursue further grievances); *Goebert v. Lee County*, 510 F.3d 1312, 1322–23 (holding that administrative procedures were unavailable where prison officials flatly prevented inmates from obtaining their jail's Operating Procedures).

At bottom, while Plaintiff's subjective misunderstanding of the administrative procedures may be understandable, that is not enough to render such procedures unavailable as a matter of law. Plaintiff's confusion resulted not from active trickery or intimidation on behalf of administrators, but instead from an alleged lack of clarity in OP 866.1. However, as outlined above, when inmates are faced with purportedly confounding procedures, they should "err on the side of exhaustion" before attempting to file a lawsuit. *See Ross*, 578 U.S. at 644.

Thus, the Court finds that the procedures were not rendered unavailable through machination, misrepresentation, or intimidation, and Plaintiff is therefore not excused from the administrative exhaustion requirement on that ground.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff failed to exhaust available administrative remedies, and thus the Court will grant Defendant's Motion for Summary Judgment.

An appropriate Order will accompany this Memorandum Opinion.

                                                         /s/ *RCY*
                                                 Roderick C. Young
                                                 United States District Judge

Richmond, Virginia
Date: October 23, 2023